IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CONNIE L. CRENSHAW,                    :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :        Civ. No. 14-1390-RGA
                                       :
DIAMOND STATE PORT                     :
CORPORATION,                           :
                                       :
            Defendant.                 :

---

Connie L. Crenshaw, Wilmington, Delaware. *Pro Se* Plaintiff.

Michael P. Stafford, Esquire, Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware.  Counsel for Defendant.


### MEMORANDUM OPINION


August 11 , 2016
Wilmington, Delaware

*[signature]*

ANDREWS, U.S. District Judge:

Plaintiff Connie L. Crenshaw, who appears *pro se*, filed this action, alleging

employment sex discrimination and retaliation under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq.* (D.I. 2). The Court has jurisdiction

pursuant to 28 U.S.C. § 1331. Defendant Diamond State Port Corporation moves for

summary judgment. (D.I. 56). Plaintiff opposes. Briefing on the matter has been

completed.

I.    LEGAL AND FACTUAL BACKGROUND

Plaintiff's complaint raises Title VII sex discrimination and retaliation claims and a

common law defamation claim. (D.I. 2). The Complaint alleges that Plaintiff was

wrongfully discharged, suspended, and terminated on April 5, 2010 and April 29, 2013.

The Complaint states that Plaintiff filed charges with the U.S. Equal Employment

Opportunity Commission on September 30, 2013 and November 5, 2014. The charge,

No. 17C-2013-00778C, asserts retaliation and alleges that Plaintiff was performing her

job as a direct employee of Automotive Logistics on Defendant's property when, in May

2013, Defendant sent a security guard to prevent Plaintiff from performing her job, and

she was discharged because of Defendant's interference. (D.I. 2 at 4). The charge

further asserts that the action was in retaliation for EEOC complaints that Plaintiff

previously filed against Defendant. Plaintiff received a notice of right to sue on October

28, 2014 (D.I. 2 at 21), and filed her complaint on November 10, 2014.

Defendant is a public corporation established by the State of Delaware for the

purpose of owning and operating the Port of Wilmington. (D.I. 58 at A076). Plaintiff

worked intermittently for Defendant as a day laborer/casual employee from 1998

through 2008. (*Id.* at A077). During this same time frame and until April 2010, Plaintiff

also worked for the "employer members" of the Delaware River Marine Trade
Association ("PMTA"), a private entity whose employer members provide line-
handling, stevedoring, and other cargo processing services at the Port of Wilmington.
(*Id.*) Individuals employed by PMTA employer members are not employees of
Defendant, although they may be performing work on Port property. (*Id.*) The PMTA
employer members' workforce is represented by a union local separate from
Defendant's workforce. (*Id.*).

Between 2004 and 2008, Plaintiff filed three charges of discrimination
with the EEOC against Defendant. (*Id.* at A001-05). In two of the cases, Plaintiff
received notices of right to sue dated March 23, 2005 and May 2, 2011, and the third
case was mediated and settled. (D.I. 58 at A002, 004; D.I. 65 at 43). Plaintiff has not
performed any work for Defendant since 2008, and has not sought work from
Defendant since then. (D.I. 58 at A077).

On April 5, 2010, Plaintiff was involved in an incident with Defendant's harbor
patrol officer. (*Id.*). At the time, she was employed by Murphy Marine Services, Inc.,
and working on Port property. (*Id.* at A006, A077). Plaintiff accused the officer of
sexual harassment. (*Id.* at A057-58, 077-78). The matter was investigated and it was
determined that Plaintiff's allegations were false. (*Id.* at A010-14, 041, 070-75). As a
result, the PMTA banned Plaintiff from working for, or seeking employment with, any of
its employer members. (*Id.* at A006-07, 078). Defendant adopted the PMTA ban and,
since April 9, 2010, Plaintiff has been banned from Port property. (*Id.* at A078).

Plaintiff, who was initially represented by counsel, filed a lawsuit in this Court as
a result of the April 5, 2010 incident and subsequent ban. *Crenshaw v. Diamond State*

*Port Corp.*, Civ. No. 11-579-RGA (D. Del). She alleged that the PMTA caused her to lose access to the Port and that Defendant retaliated against her by not hiring her and/or preventing Plaintiff from being hired by other employers at the Port. (*Id.* at D.I. 1). Plaintiff moved to voluntarily dismiss the action, and the motion was granted on November 20, 2012. (Civ. No. 11-579-RGA at D.I. 69).

On April 29, 2013, Plaintiff was hired as a day laborer by Alliance Inspection Management, a private vehicle inspection company, contracted by Hoegh Autoliner through Delaware River Stevedores, Inc., to assist with offloading vehicles from vessels berthed at the Port. (D.I. 58 at A078). Hoegh Autoliner and Delaware River Stevedores, Inc. are employer members of the PMTA. (*Id.*). Alliance is not connected to Defendant. (*Id.* at A062-63). On April 29, 2013, at approximately 8 a.m., two of Defendant's harbor patrol officers received information that Plaintiff was inspecting vehicles on a vessel berthed at the Port, in violation of Defendant's ban. (*Id.* at A081). It appears that Alliance was unaware that Plaintiff had been banned from the Port. (*Id.*) The officers radioed for the roving guard to respond to Plaintiff's location and remove her from the property. (*Id.* at A081, 083-85).

During her deposition, Plaintiff first testified that she did not know she was banned from the property. (*Id.* at A062). She also testified that she had called Jerry Custis (Defendant's Security Manager) and asked him "what was [her] status of [her] coming down there to the Port because [she] didn't want no static," and he said that she had to be working in order to come down onto the Port. (*Id.* at A059-60). Custis states that during their conversation he confirmed to Plaintiff that she remained banned from the Port and was not permitted entry for any purpose. (*Id.* at A082). Later during her

3

deposition, Plaintiff acknowledged she was banned when she testified, "wait a minute, before Murphy Marine and [Defendant] banned me, [Defendant] walked me off that job." (*Id.* at A065).

Plaintiff disputes that she was banned on April 29, 2013. (D.I. 65 at 4). I do not think whether she was or was not then banned, or whether she did or did not know she was banned, is a material fact.

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an

4

essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

With respect to summary judgment in a discrimination case, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Defendant moves for summary judgment on the grounds that: (1) any allegations arising prior to April 29, 2013, are untimely because they relate to previous charges of discrimination for which the 90-day filing deadline had long since lapsed; (2) Plaintiff failed to exhaust her administrative remedies with regard to a sex discrimination claim because it is not encompassed within the charge, and the allegations in the charge did not place Defendant on notice that such allegations were being investigated by the EEOC; (3) the Title VII claims must be dismissed because Plaintiff was not employed by Defendant at the time of the actions challenged in the charge; (4) Plaintiff failed to allege any defamatory conduct; and (5) the Court should decline to exercise supplemental jurisdiction over the defamation claim. (D.I. 57).

## III.   DISCUSSION

### A.   Time-Barred Claim

To the extent that Plaintiff seeks to reinstate any prior claims,[1] Defendant

contends those claims, including those raised in the 2011 litigation, are time-barred.

Plaintiff responds that Defendant failed to come to the EEOC for remedies to resolve

most of her complaints, each time she filed a complaint she was not concerned that the

case would drag on for years, she was in disbelief when Defendant "came to the table"

and there was no conflict resolution, and, in 2011 and 2012, she was poorly

represented by counsel, which is why her previous case was dismissed without

prejudice.

A claim brought under Title VII must be filed within ninety days of plaintiff's

receipt of the right to sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *McGovern v. City of*

*Philadelphia*, 554 F.3d 114, 115 n.1 (3d Cir. 2009).  The ninety-day filing period is

regarded as a statute of limitations, making it subject to the doctrine of equitable tolling.

*Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir.

2001).  Equitable tolling is generally appropriate in Title VII cases only when "the

defendant has actively misled the plaintiff; when the plaintiff 'in some extraordinary way'

was prevented from asserting her rights; or when the plaintiff timely asserted her rights

in the wrong forum." *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d

Cir. 1999).  Plaintiff bears the burden to show that equitable tolling is warranted.

The record reflects that, in the past, Plaintiff filed three charges of discrimination

---

[1] Plaintiff's Brief (D.I. 65) is largely about events occurring before the April 29,
2013, incident.

6

with the EEOC against Defendant.  In two of the cases, Plaintiff received notices of right

to sue, and the third case was mediated and settled.  Following receipt of the May 2,

2011 right to sue notice, plaintiff filed *Crenshaw v. Diamond State Port Corp.*, Civ. No.

11-579-RGA (D. Del), in this Court.  She subsequently moved to voluntarily dismiss the

action, and case was dismissed on November 20, 2012.

Since the timely-filed 2011 case was voluntarily dismissed in 2012, the time to

refile the claim has long since passed.  "It is a well recognized principle that a statute of

limitations is not tolled by the filing of a complaint subsequently dismissed without

prejudice."  *Cardio-Med. Assocs., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 77 (3d

Cir. 1983).

Plaintiff offers no viable argument for an equitable tolling of the limitations period.

Moreover, she may not bootstrap her previous claims to the instant complaint as the

previous claims are time-barred, including those voluntarily dismissed in Civ. No. 11-

579-RGA.  *See* 42 U.S.C. § 2000e-5(f)(1).  Therefore, the Court will grant Defendant's

motion for summary judgment as to those claims that are time-barred.  Plaintiff's claims

are limited to those for which she received the notice of right to sue dated October 28,

2014.

## B.      Administrative Remedies

Defendant contends that Plaintiff failed to exhaust administrative remedies with

regard to her sex discrimination claim and, therefore, summary judgment is appropriate.

Plaintiff argues that she exhausted her present claims of retaliation, harassment,

discrimination, hostile work environment, and defamation because they are

encompassed within her charge of discrimination.

7

As a prerequisite to filing a lawsuit in federal court for gender discrimination, a plaintiff is required to exhaust administrative remedies with the EEOC or an equivalent state or local agency. *See Hornsby v. USPS*, 787 F.2d 87, 90 (3d Cir. 1986) ("The causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC (or a state conciliation agency) for conciliation or resolution."); *see also Joyner v. School Dist. of Phila.*, 313 F. Supp. 2d 495, 500 (E.D. Pa. 2004) ("It is well settled that as a pre-condition to filing suit under Title VII, a plaintiff must first file charges with the EEOC within 180 days of the alleged discriminatory act.").

The charge of discrimination alleges harassment and discharge because of Defendant's interference, all in retaliation for employment discrimination complaints based upon gender discrimination that Plaintiff filed against Defendant in prior years. The Complaint alleges that Plaintiff was wrongfully discharged, suspended, and terminated on April 5, 2010 and, again, on April 29, 2013 and that Defendant's conduct was discriminatory because it was based on Plaintiff's sex and retaliation. In her reply, Plaintiff argues that she exhausted her administrative remedies because the sex discrimination claim was raised against Defendant in prior cases, and the October 14, 2014 charge of discrimination of retaliation "leads to and from prior discrimination charges in which some of the cases are unresolved." (D.I 67 at 3).

Plaintiff's position does not save the sex discrimination claim. While she may have raised such a claim in prior charges of discrimination, those claims are time-

8

barred. The instant charge of discrimination only states a claim for retaliation. (D.I. 2 at 4). The parties' positions submitted to the EEOC make no reference to a sex discrimination claim and speak only to retaliation. (D.I. 2 at 10-19). The sex discrimination claim was not brought to the attention of the EEOC, and, accordingly, it did not fall within the scope of its investigation. *See, e.g., Webb v. City of Philadelphia*, 562 F.3d 256, 262-63 (3d Cir. 2009) (""the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"); *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir. 1996).

Plaintiff's failure to exhaust her administrative remedies as to the alleged sex discrimination is fatal to her sex discrimination claim. Therefore, the Court will grant Defendant's motion for summary judgment for failure to exhaust administrative remedies as to the sex discrimination claim.

## C.   Employer/Employee Relationship

Defendant moves for summary judgment on the Title VII claim on the grounds that it fails for lack of an employer/employee relationship between it and Plaintiff. Defendant points to the following: (1) Plaintiff has not been employed by, or sought employment with, it since 2008; (2) the April 29, 2013 incident arose while Plaintiff was on Defendant's property, but while she was working as a day laborer for a third-party, Alliance Inspection Management, that was a subcontractor of another private party; and (3) Plaintiff admitted that she was not employed by Defendant on either April 5, 2010 (the date of the incident at issue in the 2011 Litigation) or April 29, 2013.

9

Plaintiff contends that an employer/employee relationship existed and states that she was an employee. She contests Defendant's position and does not concede it.

Title VII regulates the relationship between employers and employees. It authorizes a cause of action only against employers, employment agencies, labor organizations, and training programs. *See* 42 U.S.C. § 2000e-2. When a statute containing the term "employee" does not define the term, or defines it in a completely circular fashion, the court should apply the common law definition. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992). In *Darden*,[2] the Supreme Court set forth relevant factors to determine (in the ERISA context) whether a hired party is an employee under the general common law of agency. These factors analyze "the hiring party's right to control the manner and means by which the product is accomplished." *Id.* at 323. They include: "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Id.* at 323-24.

The essence of the *Darden* test is whether the hiring party has the right to control the manner and means by which the product is accomplished. The Third Circuit has

---

[2]*Darden* applies to Title VII cases. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015).

held that courts applying *Darden* should concentrate on three indicia of control: (1) which entity paid plaintiff; (2) who hired and fired plaintiff; and (3) who controlled plaintiff's daily employment activities. *Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013)) The court looks to these three factors in turn.

With regard to the first factor, nothing in the record suggests that Defendant paid Plaintiff at the time of the alleged 2013 retaliation. The second factor, who hired and fired Plaintiff, favors Defendant. The evidence of record indicates that Plaintiff was hired by Alliance Inspection Management. And, while Defendant certainly had some impact on the decision to fire Plaintiff, there is no evidence that the decision to terminate her was made by anyone other than Alliance. With regard to the third factor, the evidence of record is that Alliance, not Defendant, had control over Plaintiff's daily employment activities. Plaintiff's Alliance supervisor gave Plaintiff her assignment on the day in question. When Alliance was informed that Plaintiff was not allowed on Defendant's property, it was Alliance who told Defendant's guard where to find Plaintiff so that Plaintiff could be removed from the property. (*See* D.I. 58 at A084-85). Construing the facts in the light most favorable to Plaintiff, they fail to create a genuine issue of material fact as to whether Defendant had control over Plaintiff's daily activities.

In light of the foregoing, the Court finds that the evidence of record supports only one conclusion, and that is that Plaintiff was not employed by Defendant.

Because Plaintiff proceeds *pro se*, the Court also considers *sua sponte* whether Defendant was Plaintiff's joint employer under Title VII. A joint employment relationship exists under Title VII when "two entities exercise significant control over the same

11

employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997).   Whether an entity exercises significant control over an employee along with another entity hinges on whether that entity has:  (1) "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;" (2) "day-to-day supervision of employees, including employee discipline;" and (3) "control of employee records, including payroll, insurance, taxes and the like." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204-05 (3d Cir. 2014).   A review of the applicable law and the evidence of record leads the court to conclude that there is no genuine issue of material fact as to whether Defendant was Plaintiff's joint employer.

As to the first prong, no genuine issue of material fact suggests that Defendant had "authority to hire and fire [Plaintiff], promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours."  Alliance hired Plaintiff and determined her assignments.

As to the second prong, nothing in the record suggests that Defendant exercised significant "day-to-day supervision of [Plaintiff], including employee discipline." *Id.* at 205.  To the contrary, Plaintiff's supervisor immediately had her removed from Defendant's property when she became aware that Defendant had banned Plaintiff from its property in 2010.   While Defendant controlled who entered its property, it did not exercise day-to-day supervision of individuals on its premises who worked for other entities.

As to the third prong, the Court concludes that there is no genuine issue of material fact as to whether Defendant had "control of employee records, including payroll, insurance, taxes and the like." *Id.*  The record does not contain any evidence

12

that Plaintiff's employee records were maintained by Defendant.  After careful consideration, the Court finds that no reasonable jury could conclude that Defendant was Plaintiff's joint employer.

In light of the foregoing, the Court concludes that no reasonable jury could find that Defendant was Plaintiff's employer.  Thus, no reasonable jury could find for Plaintiff on the retaliation claim (or any other Title VII claim).  Therefore, the Court will grant Defendant's motion for summary judgment.

### D.     Defamation/Supplemental Jurisdiction

Plaintiff's remaining claim for defamation is raised under Delaware law.  The Court has concluded that summary judgment is appropriate as to Plaintiff's federal claim.  Therefore, the Court declines to exercise supplemental jurisdiction over the defamation claim.  *See* 28 U.S.C. § 1367(c)(3); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).

### IV.    CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment as to the federal claims and declines to exercise supplemental jurisdiction over the defamation claim.  (D.I. 56).

A separate Order consistent with this Memorandum Opinion will be issued.

13